**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JERRY L. HARVEY, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | )   No. 4:18-CV-01158 JAR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant Jerry Harvey's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, as supplemented. (Doc. Nos. 1, 7, 8). The motion is fully briefed and ready for disposition. For the following reasons, Harvey's motion is denied.[1]

**I.      Background**

On May 6, 2015, Harvey was charged with knowingly and intentionally distributing heroin, a Schedule I controlled substance in violation of 21 U.S.C. § 841(a), which resulted in the death of K.C.C. in violation of 21 U.S.C. § 841(b)(1)(C). The charge carried a mandatory minimum sentence of 20 years. On February 12, 2016, Harvey pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(a), a lesser included offense under Count I of the Indictment which carries a maximum sentence of 20 years. (Plea Agreement, Case No. 4:15-CR-00209, Doc. No. 41

---

[1] Because Harvey's motion can be conclusively determined based on the motion, files and records of the case, an evidentiary hearing need not be held. See Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994).

at 2). At his plea hearing, Harvey acknowledged, under oath, that on or about November 6, 2014,

he knowingly and intentionally distributed heroin to another person, namely K.C.C., as follows:

> On or about November 6, 2014, in St. Charles County or elsewhere in the Eastern District of Missouri, Harvey acquired and then distributed a quantity of heroin, a Schedule I controlled substance, to K.C.C., a person whose identity is known to Harvey.

> At the time Harvey distributed the heroin to K.C.C., Harvey knew that K.C.C. would ingest the heroin. K.C.C. did, in fact, ingest the heroin distributed to her by Harvey. K.C.C. did not thereafter acquire or ingest any other heroin from any other source.

> On the morning of November 6, 2014, K.C.C. was discovered in a trailer at Marquette Mobile Home Park in St. Charles, Missouri, the home of Harvey. K.C.C. was unresponsive and not breathing. According to witnesses, she had been discovered on a couch with her hands to her sides, and her face was blue. Medical assistance was summoned. However, resuscitation efforts were unsuccessful, and K.C.C. was pronounced deceased at the scene.

> Investigators interviewed witnesses, one of whom reported that on or about November 5, 2014, Harvey recruited K.C.C. to drive him to Clayton, Missouri so Harvey could cash a check he had received in the amount of approximately $6,000.00 as settlement for injuries he had received. Thereafter, Harvey then recruited the witness and K.C.C. to drive him to St. Louis so he (Harvey) could purchase heroin. K.C.C. did, in fact, transport Harvey to acquire heroin. In exchange, Harvey provided K.C.C. with a portion of the heroin he purchased. K.C.C. then took Harvey back to his house, and K.C.C. went home with the witness and her boyfriend.

> Later that evening, K.C.C. had an argument with her boyfriend. She decided to return to Harvey's home. She asked the witness to accompany her, and the witness agreed because he feared that Harvey would provide K.C.C. with too much heroin if he (the witness) wasn't there to intervene. The witness reported that he and K.C.C. remained at Harvey's residence the entire night, watching movies. The witness was awakened at approximately 5:30 a.m. as Harvey was attempting to wake K.C.C., to no avail. Harvey then left the residence to return a vehicle to his son. Thereafter, the witness fell asleep once again, only to awaken at approximately 8:00 a.m., at which time he noticed that K.C.C. was not breathing. The witness's interview was audio and video recorded.

> During a subsequent post-Miranda interview, Harvey admitted that he had asked K.C.C. to transport him to north St. Louis to purchase $500 worth of "raw" heroin.

He further admitted that he gave K.C.C. some of the "raw" heroin in exchange for transporting him to acquire it. Harvey also admitted to having provided K.C.C. with additional quantities of heroin after she returned to his residence on the evening of November 5, 2014. Although Harvey expressed confusion as to how K.C.C. could have overdosed on heroin, he did acknowledge that there are many factors to consider in determining a person's tolerance, and that it was likely that K.C.C. had died as a result of ingesting too much heroin.

On November 6, 2014, Assistant Medical Examiner Kamal D. Sabharwal of the Office of the St. Charles County Medical Examiner conducted a post-mortem examination of K.C.C. Following both an external and an internal examination of the body of K.C.C., and a full toxicology screening and analysis by Dr. Christopher Long of the St. Louis University Toxicology Laboratory, Dr. Sabharwal determined that K.C.C. died as a result of "heroin and methamphetamine intoxication." In the event of trial, expert testimony would establish that the presence of a small amount of methamphetamine in K.C.C.'s blood was diagnostically insignificant, and that K.C.C. would not have died but for the ingestion of the heroin distributed to her by Harvey.

The parties are in agreement that, although the amount of heroin involved in the offense is difficult to calculate with precision, the total amount attributable to Harvey by virtue of his own conduct and the conduct of co-conspirators reasonably foreseeable to him is less than 10 grams.

(Plea Agreement at 2-5; Plea Transcript, Doc. No. 89 at 18-21).

The transcript of the plea hearing reflects that the Court closely examined Harvey regarding the voluntariness of his plea, and found the plea was made "freely, voluntarily, and intelligently, with a full understanding of the charge and the consequences of the plea, with an understanding of his rights attending a jury trial, and the effect of the plea of guilty on those rights." (Plea Transcript at 30). Harvey stated that he had had sufficient time to talk with his attorney, that she had answered all of his questions and done everything he had asked her to do in the case, and that he was fully satisfied with her services. (Id. at 9-10).

On July 11, 2016, Harvey appeared for sentencing. Because his advisory sentencing guidelines range of 292-365 months was in excess of the statutory maximum, the effective

3

advisory guidelines range was 240 months. (Presentence Investigation Report (PSR), Doc. No. 60 at ¶ 114). The Court sentenced Harvey to a term of imprisonment of 240 months for the crime of distribution of heroin, followed by three years of supervised release. At the sentencing Harvey reaffirmed his satisfaction with counsel. (Sentencing Transcript, Case No. 4:15-CR-00209, Doc. No. 81 at 4-5). His conviction and sentence were affirmed on appeal. United States v. Harvey, 690 Fed. App'x. 434 (8th Cir. 2017).

On July 12, 2018, Harvey filed the instant § 2255 motion alleging claims of ineffective assistance of counsel. The Government filed a response (Doc. No. 3) and Harvey replied (Doc. No. 6). Thereafter, Harvey filed two supplemental letters and briefs in support of his § 2255 motion. (Doc. Nos. 7, 8).

## II.    Standard of review

It is well-established that an ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006); United States v. Cordy, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003).

To prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005); Strickland v. Washington, 466 U.S. 668, 687–88 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." Id. at 688. Review

4

of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). Courts also seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).

To establish the prejudice prong of the Strickland test, one must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Anderson, 393 F.3d at 753-54 (quoting Strickland, 466 U.S. at 694). ). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695; Williams v. United States, 452 F.3d 1009, 1012–13 (8th Cir. 2006).

The first prong of the Strickland test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997).

A court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of

5

Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998 ); see also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

### III.   Discussion

Harvey alleges his counsel was ineffective for failing to argue that under Burrage v. United States, 134 S. Ct. 881 (2014), his sentence could not properly be enhanced under Section 2D1.1(a)(2) of the United States Sentencing Guidelines. (See Doc. No. 1 at 2). In Burrage, the United States Supreme Court held that at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable for the penalty enhancement under 21 U.S.C.A. § 841(b)(1)(C), which imposes a 20-year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug when "death or serious bodily injury results from the use of such substance," unless such use is a but-for cause of the death or injury. 134 S. Ct. at 218-19. Harvey contends that the Government failed to prove that heroin was the "but for" cause of K.C.C.'s death and that had he been "accurately advised of his potential sentence under this enhancement," he would not have pled guilty and instead proceeded to trial. (Doc. No. 1 at 6).

This claim is refuted both by the record and Harvey's sworn testimony. At the change of plea hearing, the Court discussed the terms of the plea agreement with Harvey. The Court repeatedly cautioned Harvey that he was subject to a maximum sentence of 20 years if he entered a plea to the lesser included offense pursuant to the plea offer made by the Government. The Court

reminded Harvey several times that the Government had offered him a binding plea agreement

pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, whereby the parties

jointly recommended a sentence of 18 years. The Court advised Harvey that had the parties entered

a plea pursuant to Rule 11(c)(1)(C), in the event the Court was unable to follow the parties'

recommended sentence, it would have given either side an opportunity to withdraw the guilty plea.

(Plea Tr. at 22). Instead, the Court noted, Harvey had rejected the Government's offer and instead

"decided to enter a plea of guilty not pursuant to any specific recommendation; and by doing so,

the Court can consider the whole range of punishment, which again, is that term of imprisonment

of up to 20 years." (Id.). This demonstrates Harvey's involvement in his plea negotiations and plea

agreement, which is completely inconsistent with his allegations that his plea was not entered

voluntarily with a full understanding of the consequences. Harvey indicated that he understood his

rights and wished to proceed with the plea. He acknowledged that he had discussed his options

fully with his attorney and had no questions about the possible sentence he could receive. (Id. at

23).

At sentencing, the Court noted Harvey's objection to the PSR regarding an enhancement

under the sentencing guidelines, Section 2D1.1(2), which provides an enhancement to the base

offense level where death or serious bodily injury results from the sentence of conviction.

(Sentencing Tr. at 7). At that time, Harvey's counsel indicated that they were withdrawing the

objection and agreeing that the enhancement would apply given Harvey's admission of the

factual statements in the plea agreement that K.C.C.'s death was caused by the heroin he gave

her. (Sentencing Tr. at 8-9).

Prior to adopting the PSR, the Court engaged Harvey in a discussion regarding his previously filed objection. More specifically, the Court noted that "counsel has indicated that [Harvey] ha[d] gone through again the factual statements set out in the plea agreement." (Sentencing Tr. at 9). The Court reminded Harvey, "[y]ou admitted all of factual [sic] statements, said they were all true and correct, you did those things. You have read through those again; is that correct?" (Id.). Harvey responded, "[y]es, sir." (Id.). Yet again, the Court asked "[d]o you agree that the factual statements set out in the plea agreement clearly indicate that the death was caused by the substance you distributed to the victim in this case?" (Id.). Harvey answered, "[y]es," and then confirmed he was "withdrawing [his] objection, agreeing that the enhancement under the guidelines apply [sic]." (Id. at 9-10).

Harvey's conclusory allegations fall well short of establishing that his counsel's performance fell below an objective standard of reasonableness, and that there exists "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill, 574 U.S. at 59. Harvey acknowledged there was no agreement as to the sentence to be imposed and that the full range of punishment, i.e., a term of imprisonment of up to 20 years, was available for the Court's consideration. (Plea Tr. at 22, 28). In the end, Harvey made a tactical decision to enter a plea to a lesser-included offense in an effort to avoid a significantly higher sentence. He offers nothing in his motion to suggest that he would have made any other decision, regardless of counsel's advice. His claim is further refuted by his testimony that his counsel had done everything he asked her to do and that he was "very much" satisfied with her services. (Plea Tr. at 9-10; Sentencing Tr. at 4-5). This claim is therefore denied.

8

Harvey also appears to allege that his counsel was ineffective on appeal for failing to challenge the penalty enhancement under 21 U.S.C.A. § 841(b)(1)(C) under Burrage, 134 S. Ct. 881. (Doc. No. 1 at 3). Appellate counsel does not have a duty "to advance every argument, regardless of merit, urged by the defendant." Evitts v. Lucey, 469 U.S. 387, 382 (1985). Moreover, counsel has discretion to abandon losing issues on appeal. Reese v. Delo, 94 F.3d 1177, 1185 (8th Cir. 1996) (internal citation omitted). To show that his attorney was deficient in failing to raise the claim on appeal, Harvey must show a reasonable likelihood that, but for his attorney's alleged error, the result on appeal would have been different. Id. (citing Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir.1987)). Absent contrary evidence, the failure to raise a claim is assumed to be an exercise of "sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (internal citation omitted).

Harvey's attorney did not include any argument relating to the cause of death or the Burrage case in his appellate brief, given the admissions he made under oath at the change of plea hearing that the facts recited by the Government and set forth in the written Plea Agreement were true and correct, and specifically that K.C.C. would not have died but for the ingestion of the heroin that he distributed to her. (See Doc. No. 6-4; Plea Tr. at 21). For these reasons, Harvey's likelihood of success on appeal on this issue was remote. When a claim has no chance of proving meritorious, counsel is not ineffective for failing to raise it. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994). Further, Harvey has presented no evidence establishing that counsel's failure to raise this issue was anything other than an exercise of sound appellate strategy. This claim is denied.

Harvey has filed two supplemental letters in support of his § 2255 motion which appear to allege claims of prosecutorial misconduct. (Doc. Nos. 7, 8). These claims were not included in the original motion and Harvey never sought leave from this Court to add them. Nevertheless, given Harvey's *pro se* status, the Court has considered the claims but finds them without merit. There is no evidence of misconduct in this case and none of the allegations he raises in these supplements have any bearing on the voluntariness of his plea or admissions of guilt both in the signed plea agreement and at the plea hearing. The record reflects that no one promised Harvey anything, threatened him in any way, or made any other representation to him of any kind to induce him to enter his guilty plea, and Harvey confirmed his understanding that the full range of punishment was available for the Court's consideration. (Plea Tr. at 28; Sentencing Tr. at 5). Likewise, none of the allegations relate to his guilt or innocence and, in fact, his claims of actual innocence are refuted both by the record and his own sworn testimony.

## IV.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Movant Jerry Harvey's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Harvey has not made a substantial showing of the denial of a federal constitutional right.


Dated this 28th day of December, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

10